IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| EDDIE OGLETREE, and individual, ) | |
| GERAL STEPHENS, an individual, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | CV: 3:07-cv-867-WKW |
| v. ) | |
| ) | |
| CITY OF AUBURN, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |
| CWH RESEARCH, INC., ) | |
| ) | |
| Third-Party Defendant ) | |

## CWHI'S BRIEF IN SUPPORT OF SUMMARY JUDGMENT

### INTRODUCTION

The City of Auburn claims that a test created by CWH, Inc. ("CWH") and used by the City's fire department with regard to Battalion Chief ("Batt Chief") promotions sought unsuccessfully by Gerald Stephens and Eddie Ogletree did <u>not</u> have an adverse impact on black Batt Chief applicants. Notwithstanding the fact that neither Ogletree nor Stephens met the City imposed cut-off score on the test, they do not challenge the test. Rather, they challenge the City's overall promotion policy of allowing probationary firefighters to apply for Batt Chief, to use a test score cut-off which had the effect of not allowing applicants to participate in a practical assessment

center, and not to take into account additional factors, such as seniority, had an adverse effect on black applicants to Batt Chief.

## FACTS

On December 21, 2005, CWH, Inc. and the City of Auburn entered into a Letter of Agreement pursuant to which CWH agreed to provide certain services to the City related to the Batt Chief. CWH agreed:

- to provide a job analysis review
- to provide a validated, semi-customized written test
- to handle test scoring
- to administer an assessment center including its development, training, and scoring
- to provide feedback letters to candidates and process summary to the City, and
- to conduct a content validation process for the test.

In addition to the services related to the Batt Chief promotion decisions, CWH agreed to defend, indemnify, and hold the City and its officials harmless "from and against any claims, demands or actions brought by third parties **which are related in any way or are associated with the negligence, tortuous [sic] acts or other unlawful conduct of CWH or its respective agents, officers and employees in the performance of**" the Agreement. (_____dep., Ex. \_\_\_).

On September 28, 2001, plaintiffs Eddie Ogletree and Gerald Stephens filed their Complaint to initiate this civil rights action. In their Complaint, they allege, among other things, that:

> 15. Prior to February 2007, only non-probationary lieutenants were allowed to apply for the position of Battalion Chief. However, in February 2006, the City of Auburn changed its policies to allow non-probationary and probationary firefighters, including entry level Fire Fighters, and student Fire Fighters, to apply for the Battalion Chief position.
>
> 16. During this same period of time, the City of Auburn Fire Division changed its policies to require applicants for Battalion Chief to pass a written test. Coincidentally, the policy changes occurred at a time when 2 African American lieutenants and 1 entry level African American Career Fire Fighter became eligible for the position of Battalion Chief. Seniority within the division was discarded as a criteria for promotion to Battalion Chief positions.

(Complaint, paras. 15-16). They then allege that:

> 47. <u>The above employment practices</u>, as administered by the Defendants, have had a substantial adverse impact on a protected group, namely, African Americans; and
>
> 48. Plaintiffs allege that the practices are discriminatory in operation, though the Defendants will maintain that they are fair in form. Plaintiffs allege that the employment procedures and/or testing mechanisms operate as a "built in headwind" for minority groups and are unrelated to measuring job capability.

(Complaint, paras. 47-48) (emphasis added). The plaintiffs do not allege in their Complaint that a written test had a disparate impact vis-a-vis any Batt Chief promotion decision.

Against this backdrop, the City filed a third-party complaint in which it alleges:

> 4. The City of Auburn contracted with CWH to provide job analysis review, written test development, test scoring, assessment center, feedback and validity as a decision-making tool for the City of Auburn's selection of Battalion Chiefs for the Fire Department. (See Ex. A, Resolution by the city Council to adopt the letter of agreement between the City of Auburn and CWH). The contract between CWH and the City of Auburn specifically called for adherence to standards and guidelines on Employment Selection Procedures. See Ex. A at p. 2 of 7[1].
>
> 5. Using CWH's procedures and processes, the City of Auburn promoted two individuals to Battalion Chief in the Spring of 2006. As a result, Gerald Stevens and Eddie Ogletree, Plaintiffs in the above-styled cause, sued the City of Auburn alleging that the City of Auburn has used discriminatory practices against African-Americans regarding particular jobs, including the Battalion Chief positions, and that the hiring practices of the City of Auburn are discriminatory.
>
> 6. The contract between the City of Auburn and CWH specifically states:

---

[1] No party claims that CWH's test did not comply with these guidelines.

> CWH shall defend, indemnify, and hold [the City of Auburn], its officials, representatives, agents, servants and employees free and harmless from and against any claims, demands or actions brought by third parties which are related in any way or are associated with the negligence, tortuous acts or other unlawful conduct of CWH or its representatives, agents, officers and employees in the performance of this agreement.
>
> …

8. The City of Auburn denies that it has ever engaged in discrimination against either of the Plaintiffs or any other employee and maintains that its employment decisions were based on legitimate, non-discriminatory reasons. The City of Auburn further maintains that the testing procedures established for selection of Battalion Chief were not discriminatory in practice or application. Without waiving said position, the City of Auburn alleges that to the extent it is found liable to either Plaintiff for race discrimination on the Plaintiffs' claim regarding the City of Auburn's failure to award them the position of Battalion Chief, the City of Auburn asserts that it is contractually entitled to contributions and/or indemnity from CWH pursuant to the contract entered between the City of Auburn and CWH attached hereto as Exhibit A.

….

10. The City of Auburn denies that it has ever engaged in discrimination against either Plaintiff or any other employee and maintains that its employment decisions were based on legitimate, non-discriminatory reasons. The City of Auburn further maintains that the testing procedures established for selection of Battalion Chief were not discriminatory in practice or application. Without waiving said position, the City of Auburn

> alleges that to the extent it is found liable to the Plaintiffs for race discrimination on their claim regarding the City of Auburn's failure to award them the position of Battalion Chief, the City of Auburn asserts that it is contractually entitled to contributions and/or indemnity from CWH pursuant to common law, the City of Auburn is entitled to contribution and/or indemnity from CWH.

(Third-Party Complaint).

As noted above, the plaintiffs do not allege in their Complaint that the written test developed by CWH had a disparate impact on Batt Chief applicants. Ogletree's deposition testimony confirms that they do not complain in this lawsuit about the <u>test</u> itself; rather, they complain about the city's <u>policy</u> of not taking into account other factors including years of service and their performance in the assessment center, which they were not allowed to participate in due to their test score.

In his deposition, Ogletree testified as follows:

> Q. Mr. Ogletree, I want to make sure I fully understand your disparate impact claim. My understanding is you're not claiming that the test – the CWH test itself had a negative impact on black employees at the Auburn Fire Department, are you?
>
> A. **Not the test itself.**
>
> Q. It's the policy that utilizes the test as part of it, but it was the policy that didn't take into consideration years of service, that didn't allow all

> applicants to go through all phases of the process, including the practical side, the assessment, the in-basket and that sort of thing, and result in a total score of looking at all components of the process; is that correct?
>
> A.    Yes, sir.
>
> Q.    You don't have a complaint about the test and the way it was graded or the way the scores came out. You just complained that you weren't allowed to go through the whole process?
>
> A.    Yes, sir.
>
> Q.    It's the City's policy of not taking into consideration other factors and allowing the applicants to go through the entire process?
>
> A.    Yes, sir.

Mr. Stephens testified under oath essentially the same as Mr. Ogletree.

> Q.    Mr. Stephens, you've heard the questions that Mr. Morgan and I have asked Mr. Ogletree. Do you agree—Is your testimony and your position I this lawsuit and the claims you bring the same that Mr. Ogletree has just testified to?
>
> A.    Yes, sir. It is the same.
>
> Q.    **You don't have a complaint about the test itself**; it's the City's policy of not using additional factors in the ultimate decision as to who would be promoted to battalion chief; **is that correct**?
>
> A.    **Yes, sir.**

The policy decision not to allow applicants to participate in the assessment center and not to take additional factors into account was the City's, not CWH's. In fact, CWH had no decisional authority in the formation of tthat policy. Steve Reeves, the City's human resources director, testified as follows:

> A. I'm the human resources director.
>
> Q. You don't participate in the decisions to promote or not to promote City of Auburn firefighters; is that correct?
>
> A. I have not.
>
> Q. Are you in charge of implementing policies and procedures with regard to the promotional practices of the City of Auburn?
>
> A. Yes.
> …
> A. Lee Lamar
>
> Q. What's Mr. Lamar's position?
>
> A. Currently he's the fire chief.
>
> A. Deputy fire chief.
>
> Q. Who was the fire chief at that time?
>
> A. Larry Langley.
> …

Q. Tell me what, if any, participation you had in the battalion chief promotion that occurred in May of 2006.

A. I helped identify the firm that would guide us through that process. I helped put together a contract to employ that firm. I participated in the discussions about the process. I helped facilitate the interactions between the firm and the City.

Q. Plaintiff's Exhibit Number 1 is a letter of agreement…What was your understanding of what this company was supposed to do with regard to the battalion chief promotion in May of 2006?

A. They were to develop a job-related neutral selection process for us to use to make promotions to the rank of battalion chief.

Q. This company is not an assessment center, are they?

A. They recommended and developed a series of exercises to help determine who was the best candidate for the promotion.

Q. Was that provided to the city in some written form?
…
Q. With regard to the battalion chief promotion in May of 2006, who at the City of Auburn decided that there was going to be a written test with a cutoff score as a factor in the promotion?

A. It was a collective decision made by me, the public safety director, the deputy fire chief, and CWH.

Q. Were you personally involved in the meetings with CWH, Langley, Lamar, the safety director

where y'all discussed with CWH that a test needed to be given with a cutoff score?

A. Yes.

...

A. The CWH process incorporates a testing option.

Q. It wasn't a requirement; it was an option; is that correct?

A. It was an option, correct.

Q. Was it at the City's discretion to give or not to give the test with a cutoff score?

A. Yes.
...
A. I know Lee Lamar stated that 70 percent was the common cutoff score used in the fire service.

Q. Are you aware that CWH pursuant to administering this test required that there be a cutoff score?

A. No. I think that was our choice.

Q. That was your choice? They City of Auburn's choice?

A. It was our, as you stated, discretion.

Q. Isn't it true that the City of Auburn made the decision that the test with a cutoff score was the initial factor in whether an applicant proceeded through the rest of the process?

A. Again, this was a decision made collectively in consultation with CWH. Had the City said we

> don't want to use a cutoff score, I don't think CWH would have argued with us.
>
> Q. The City of Auburn had the discretion as to how the test and the cutoff score would be implemented into the promotional process. Is that a fair statement?
>
> A. Yes.
>
> Q. They could make recommendations but they could not make decisions; is that correct?
>
> A. Correct.

Lee Lamar's testimony is consistent with Steve Reeves's testimony. (See generally, Lamar dep., pp. 1-31). He also confirmed that the City, and not CWH, had the "ultimate discretion as to whether or not [the] test would contain a cut-off score." (Lamar dep., pp. 20-21).

## ARGUMENT

The material facts relative to the City's claims for defense and indemnity and the plaintiffs' underlying claims simply are not in dispute. They are as follows:

> 1. The City contracted with CWH to provide a written test and a practical assessment center (and services ancillary to these two components);
>
> 2. The City and not CWH, made the ultimate decision to use a cut-off score of 70 and not to allow Battalion Chief applicants who scored below 70 to proceed to the practical assessment center;

    3. The City, and not CWH, made the decision to allow probationary firefighters to apply for Bat Chief[2] and not to take into account in the Battalion Chief promotion decision additional factors such as seniority;

    4. Both plaintiffs scored less than 70 on CWH's written test, and neither was allowed (pursuant to the City's policy) to participate in the practical assessment center;

    5. Neither plaintiff claims that CWH's test itself had a disparate impact on black battalion chief applicants in either their Complaint or in their sworn testimony;

    6. Neither plaintiff alleges that CWH engaged in any negligent, tortuous, or unlawful conduct in the performance of CWH's services under its Agreement with the City;

    7. The City has pled and testified that CWH's test did not have an adverse impact on black Battalion Chief applicants;

    8. The City does not allege in it's Third-Party Complaint that CWH acted negligently, tortuously, or unlawfully in the performance of its services under the Agreement.

The plaintiffs do not allege that CWH's test had a disparate impact on black Batt Chief applicants; rather, they allege that the City's policy of allowing probationary firefighters to apply, not taking seniority and other factors into account, and utilizing a test score cut-off had a disparate impact

---

[2] Bill James, the City's public safety director, testified that he made the decision to allow probationary firefighters to apply. (James dep., pp. 34-35).

on black applicants. Regardless of the merits or demerits of their claim, it simply does not implicate CWH. The City also does not claim that the test itself had an adverse impact. In fact, the City has not alleged set of facts that could give rise to defense or indemnity under its Agreement with CWH, and the record is bereft of any fact that could support such a claim.

Because the material facts of this case are not in dispute and because no party to this action claims that CWH's test had an adverse impact on black Batt Chief applicants or that CWH otherwise acted negligently, tortuously, or unlawfully, CWH is entitled to summary judgment on the City's claim for defense and indemnity under its Agreement with CWH.


/s/ William K. Hancock
William K. Hancock

Attorney for CWH Research, Inc.

OF COUNSEL:
ADAMS & REESE LLP
2100 3rd Avenue North, Suite 1100
Birmingham, AL 35203
Telephone: (205) 250-5000
Facsimile: (205) 250-5034

**CERTIFICATE OF SERVICE**

     I hereby certify that on August 11, 2008, I electronically filed same using the CMEF system which will electronically notify all attorneys of record.

Richard F. Horsley
King, Horsley & Lyons, LLC
1 Metroplex, Suite 280
Birmingham, AL 35209


Randall Morgan
Hill Hill Carter
P.O. Box 116
Montgomery, AL 36101-0116

                                               /s/ William K. Hancock
                                               OF COUNSEL